IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:16-CV-348-FL

STEVEN F. MEYER,                    )
                                    )
            Plaintiff,              )
                                    )
    v.                              )
                                    )
TOWN OF WAKE FOREST, ERIC           )                    ORDER
KERAVUORI, MITZI FRANKLIN,          )
VIRGINIA JONES, MARK WILLIAMS,      )
and ROE O'DONNELL,                  )
                                    )
            Defendants.             )


This matter is before the court on defendants' motion for summary judgment (DE 48), brought pursuant to Federal Rule of Civil Procedure 56. The motion has been fully briefed, and the issues raised are ripe for ruling. For reasons noted, defendants' motion for summary judgment is granted in part and denied in part.

## STATEMENT OF THE CASE

Plaintiff commenced this action by filing complaint on June 8, 2016, seeking judgment against defendants Town of Wake Forest ("Town"), Eric Keravuori ("Keravuori"), Mitzi Franklin ("Franklin"), Virginia Jones ("Jones"), Mark Williams ("Williams"), and Roe O'Donnell ("O'Donnell") (collectively, "defendants") asserting violations of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, et seq.

On October 25, 2016, defendants filed motion to consolidate cases, seeking to consolidate the present case with Gregory Blake Haley v. Town of Wake Forest, Eric Keravuori, Mitzi Franklin,

<u>Virginia Jones, Mark Williams, and Roe O'Donnell</u>, No. 5:16-CV-347, filed in the Western Division for the Eastern District of North Carolina ("<u>Haley</u> case"). Defendants argued that both cases arise from the terminations of employment of both plaintiffs, both of whom were formerly employed by the Town of Wake Forest as inspectors under the supervision of the director of engineering, defendant Keravuori, and both of whom were terminated on October 31, 2014, for allegedly recording their time away from work incorrectly as sick leave. (DE 28 at 1). Both plaintiffs allege violations of the FMLA and have filed the same three claims in each case: 1) FMLA retaliation/discrimination; 2) wrongful discharge under the FMLA; and 3) FMLA interference. (<u>Id.</u> (citing Compl. (DE 1) ¶¶ 77-109; <u>Haley</u> Compl. (DE 28-1) ¶¶ 66-103)).[1]

Following Rule 16 status conference, the court granted in part and denied in part defendants' motion to consolidate, and the cases were consolidated for the limited purpose of "promoting efficiencies in discovery procedures." (DE 35 at 2). Following grant of extension of deadline for completing discovery, the court held another Rule 16 status conference, setting deadline for all dispositive motions in both cases for December 30, 2017, denying defendants' request for continued consolidation, and separating the cases for all purposes going forward including dispositive motions and trial, without prejudice to later renewed motion for consolidation, if warranted. (DE 47).

On December 30, 2017, defendants filed the instant motion for summary judgment. In support, defendants rely upon statement of material facts and the following: excerpts from the depositions of plaintiff and defendants Franklin, Jones, Keravuori, and O'Donnell; affidavits from defendants Franklin, Jones, Keravuori, and Williams as well as affidavits from Larry Rochelle, Mickey Rochelle, and Mike Barton, all employees of defendant Town; excerpts from defendants'

---

[1] On December 19, 2016, this case was reassigned to this court for all further proceedings.

document production, including termination document regarding plaintiff, defendants' investigative report into the instant matter, personnel policy, ethics presentation, as well as plaintiff's time sheets; and emails from plaintiff to defendant Keravuori requesting time off.

Plaintiff additionally relies upon statement of material facts and the following: personal affidavit, work reviews and evaluations, defendants' family and medical leave procedures presentation, FMLA request form, FMLA certification of health care provider for family member's serious health condition, defendants' action plan for the engineering department, and blank FMLA notice of eligibility and rights and responsibilities.

## STATEMENT OF THE FACTS

Except as otherwise provided below, the undisputed facts may be summarized as follows.[2]

Plaintiff was employed by defendant Town as a construction inspector from December 13, 2005 until his termination on October 31, 2014.  (DE 49 ¶ 1; DE 57 ¶ 1).  Plaintiff was a member of the engineering department and was supervised by the director of engineering, defendant Keravuori.  (DE 49 ¶ 2; DE 57 ¶ 2).

Plaintiff was provided with a copy of defendant Town's personnel policy, including all relevant updates, which included an at-will employment policy stating, "[t]he employment relationship between the Town and the employee is terminable at the will of either party at any time," and any employee who violates any of the provisions of the policy "shall be subject to appropriate disciplinary action . . . ."  (DE 49 ¶ 3; DE 57 ¶ 3).

Defendant Town's sick leave policy states, "Sick leave with pay is not a right, which an employee may demand, but a privilege granted for the benefit of an employee when sick," and sick

---

[2]  The parties submit facts relevant to both this case and the <u>Haley</u> case.  Except where otherwise noted, the court focuses on facts relevant to the present case.

leave may be used "when an employee must care for a member of his or her 'immediate family.'" (DE 49 ¶ 4; DE 57 ¶ 4). The policy also provides that vacation "shall be used for rest and relaxation and may be used for medical purposes." (DE 49 ¶ 4; DE 57 ¶ 4). The policy states, "[s]ick leave is not to be abused," that "[u]sing sick leave under false pretenses is a serious violation of Town policy and would be grounds for dismissal," and that "[c]laiming sick leave under false pretenses will result in disciplinary action up to and including dismissal." (DE 49 ¶ 4; DE 57 ¶ 4).

Defendant Town's personnel policy also includes a section concerning employees' rights pursuant to the FMLA, and defendant Town has provided training to employees regarding their rights and responsibilities under the FMLA. (DE 49 ¶ 5; DE 57 ¶ 5). Notice of employees' rights and responsibilities is posted on the bulletin board on the first floor of Town Hall. (DE 49 ¶ 6; DE 57 ¶ 6). Defendant Town's policy requires that employees provide 30 days notice if the need for leave is foreseeable and states that failure to provide notice of the need for leave may result in denial of leave. (DE 49 ¶ 6; DE 57 ¶ 6). Additionally, employees are required to exhaust sick and vacation leave prior to use of FMLA leave. (See DE 56-1 at 7 ("Employees requesting Family Medical Leave are required to exhaust all accrued sick, vacation and compensation leave. Once paid leave is depleted, unpaid leave will commence for the remainder of an employee's Family and Medical leave.")).

Defendant Town currently has approximately 235 employees. (DE 49 ¶ 6; DE 57 ¶ 6). Approximately 104 current employees have taken FMLA leave on at least one occasion. (DE 49 ¶ 6; DE 57 ¶ 6).

Defendant Jones was hired as defendant Town's director of human resources on March 19, 2013, and thereafter held a mandatory one hour Ethics Training, which every employee was required

to attend and which plaintiff attended, based on her belief in a need "to more consistently enforce the rules and make better personnel decisions." (DE 49 ¶¶ 7-13; DE 57 ¶¶ 7-13). Defendant Jones specifically addressed sick leave in the training and stated that time for sick leave may not be used like vacation leave and that it can only be used in the event of illness. (DE 49 ¶12; DE 57 ¶12).

Plaintiff took FMLA leave for the birth of his oldest son in 2012. (DE 49 ¶14; DE 57 ¶14). Plaintiff was supervised by defendant Keravuori at that time, and plaintiff had no issue with taking FMLA leave for the birth of his first son. (DE 49 ¶14; DE 57 ¶14).

Plaintiff's second son was born on August 18, 2014 via caesarian section, and plaintiff applied for and was granted FMLA leave with regard to the birth of his second son. (DE 49 ¶15; DE 57 ¶15). Plaintiff provided defendant Town all required paperwork including a certification of health care provider for family member's serious health condition that indicated plaintiff's wife would be incapacitated from August 18, 2014 through November 11, 2014. (DE 56-12 at 2-5).

Plaintiff told Mr. Keravuori that he would be taking FMLA leave on Fridays; however, Plaintiff's timesheets do not reflect this pattern and instead show plaintiff used the following sick days off after the birth of his child:

- Friday, August 15
- Tuesday, Wednesday, and Friday, August 19-20, and 22
- Tuesday, August 26
- Tuesday through Friday, September 2 through September 5
- A half day on Friday, September 19 2014
- Thursday and Friday, October 9-10
- Friday, October 17
- Tuesday, October 21 and 5 hours on Thursday, October 23

(DE 49 ¶16; DE 57 ¶16).

On October 7, plaintiff sent an e-mail to defendant Keravuori stating that he would be out on Thursday and Friday, October 9 and October 10, but did not provide a reason for his absence in

the email. (DE 49 ¶17; DE 57 ¶17). Plaintiff also sent an e-mail to defendant Keravuori on October 20, 2014, letting him know he would be out of the office on October 21, 2014, but did not provide a reason for his absence in the email. (DE 49 ¶19; DE 57 ¶19). Plaintiff asserts, however, that he provided verbal notice to defendant Keravuori, specifically informing him that he would be providing care for his wife and newborn on the days in question and that the family would be going to the beach on October 9 and October 10 and the state fair on October 21, 2014, all of which defendant Keravuori approved. (DE 57 ¶¶18-19; DE 56-16). Plaintiff substituted paid sick leave for each FMLA-related absence identified above and noted "FMLA" on each of his timesheets. (See DE 56-4 at 33-42).[3]

On October 21, 2014, Mickey Rochelle, facilities director, requested a meeting with defendant Franklin, senior human resources consultant; at the meeting, Mickey Rochelle told Franklin that he felt compelled to speak up regarding his concerns due to the ethics training he had received. (DE 49 ¶ 20; DE 57 ¶20). Defendant Franklin, in her "summary of allegations reported on October 22, 2014," states that Mickey Rochelle informed her plaintiff used sick time for the time he was at the beach and planned to use sick time for his upcoming visit to the North Carolina State Fair on October 21, 2104, among other allegations. (DE 50-13 at 4; DE 56-6 at 3).

Defendant Franklin reported this matter to her supervisor, Virginia Jones, human resources director, who asked Franklin to type a summary of Rochelle's statement to her and to begin an investigation into the allegations. (DE 49 ¶24; DE 57 ¶24). Defendant Jones shared this with town

---

[3] Defendant Franklin testified that employees on FMLA leave are expected to record their FMLA leave by writing "FMLA" in the "notes" section of their weekly timesheet. (DE 56-17 at 16). The parties dispute why the FMLA designation was placed on plaintiff's timesheets with plaintiff asserting that he "marked FMLA on each timesheet while has was on leave, even in weeks in which took no time off, to designate that he was still within his period of approved leave," (DE 56 at 8), and defendants asserting that plaintiff forgot to take the FMLA notation off of his timesheet on the weeks plaintiff worked a full week, (DE 51 at 5).

manager, defendant Williams, who asked that defendant Jones keep him updated on the investigation because concerns had been expressed in the past regarding the attendance of plaintiff. (DE 49 ¶24; DE 57 ¶24).

Defendant Franklin checked the time records and learned that plaintiff had taken sick leave on the dates he was away from work at the beach. (DE 49 ¶27; DE 57 ¶27). On October 28, 2014, plaintiff completed his timesheet and turned them in. (DE 49 ¶28; DE 57 ¶28). Defendant Keravuori, who was the supervisor of plaintiff, was not informed of the issue until after the time sheets were turned in. (DE 49 ¶28; DE 57 ¶28).

On October 30, 2014, defendant Franklin interviewed plaintiff about the allegations that he had misused time to attend the State Fair. (DE 49 ¶29; DE 57 ¶29). Plaintiff admitted that he had attended the State Fair and had used sick time and asked if he could change his sick time to vacation time. (DE 49 ¶29; DE 57 ¶29).

Defendant Jones and Franklin argue they believed plaintiff intentionally misused sick leave and recommended termination of plaintiff. (DE 49 ¶¶ 30-32; DE 57 ¶¶ 30-32).[4] Defendant Keravuori agreed with the recommendation. (DE 49 ¶33; DE 57 ¶33). Plaintiff appealed the decision to terminate his employment, and in an hearing held thereafter, defendant William upheld plaintiff's termination. (DE 49 ¶ 34; DE 57 ¶ 34).

## DISCUSSION

A.  Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute

---

[4]  In June 2014, defendant Town had terminated another employee, for misusing Town time, when this employee traveled to Raleigh to pick up necessary supplies and made an unauthorized 36 minute stop in his vehicle. (DE 49 ¶31; DE 57 ¶31).

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On cross-motions for summary judgment, the court "consider[s] each motion separately on its own merits to determine whether [any] of the parties deserves judgment as a matter of law." Defs. of Wildlife v. N. Carolina Dep't of Transp., 762 F3d 374, 392 (4th Cir. 2014). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (internal quotation omitted). Only disputes between the parties over facts that might affect the outcome of the case properly preclude entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability,

. . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489–90.

B.     Analysis

Under the FMLA, "an eligible employee" is "entitled to a total of 12 workweeks of leave during any 12–month period" for family- and health-related reasons, such as "birth of a son or daughter of the employee and in order to care for such son or daughter" or "to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C. § 2612(a)(1). Leave for the former reason can be taken intermittently if the employee and employer agree; leave for the latter reason can be taken intermittently when medically necessary. Id. § 2612(b)(1); see also Dotson v. Pfizer, Inc., 558 F.3d 284, 293 (4th Cir. 2009) ("The requirement that employer and employee must 'agree' on intermittent leave means that employers can refuse to allow this type of leave in birth, adoption and foster care placement cases. By contrast, employees have an unfettered right to take FMLA leave because of a serious health condition intermittently when 'medically necessary,' with or without employer consent.").

The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. §

2615(a)(1). Claims for violations of the prescriptive rights set forth in § 2612 are "known as 'interference' or 'entitlement' claims." Yashenko v. Harrah's NC Casino Co., 446 F.3d 541, 546 (4th Cir. 2006).

Additionally, the FMLA "contains proscriptive provisions that protect employees from discrimination or retaliation for exercising their substantive rights under the FMLA." Id. The retaliation provision states that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2).

Here, plaintiff brings claims for both retaliation and interference. The court first will address the sufficiency of notice provided by plaintiff to defendants regarding his leave taken on October 9, 10, and 21, 2014, and then address plaintiff's retaliation and interference claims.[5]

1.      FMLA Notice

The FMLA requires an employee provide "at least verbal notice sufficient to make the employer aware that the employee needs FMLA–qualifying leave, and the anticipated timing and duration of the leave." 29 C.F.R. § 825.302(c). The FMLA distinguishes between notice needed when an employee seeks leave for the first time for a FMLA-qualifying reason and when, as here, an employee seeks leave due to a FMLA-qualifying reason for which the employer has previously provided FMLA-protected leave:

> When an employee seeks leave for the first time for a FMLA–qualifying reason, the employee need not expressly assert rights under the FMLA or even mention the FMLA. When an employee seeks leave due to a FMLA–qualifying reason, for which the employer has previously provided FMLA–protected leave, the employee must

---

[5] Although plaintiff states three causes of action for 1) wrongful discharge under the FMLA, 2) FMLA retaliation/discrimination, and 3) FMLA interference, (see Compl. (DE 1) ¶¶ 77-109), these claims substantively are claims for FMLA interference and FMLA retaliation and thus will be analyzed as such.

specifically reference the qualifying reason for leave or the need for FMLA leave. In all cases, the employer should inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought by the employee, and obtain the necessary details of the leave to be taken. In the case of medical conditions, the employer may find it necessary to inquire further to determine if the leave is because of a serious health condition and may request medical certification to support the need for such leave. See § 825.305.

29 C.F.R. § 825.302(c).[6]

The FMLA makes clear that it is incumbent upon the employer to seek out the necessary information regarding FMLA leave, and as stated by the Fourth Circuit, "[r]egulations promulgated by the Department of Labor 'repeatedly emphasize that it is the employer's responsibility to determine the applicability of the FMLA and to consider requested leave as FMLA leave.'" Dotson, 558 F.3d at 293 (citation omitted).

It is undisputed that plaintiff informed defendant Keravuori that his second son was born on August 18, 2014 via caesarian section, and plaintiff applied for and was granted intermittent FMLA leave with regard to this birth. (DE 49 ¶15; DE 57 ¶15). Defendants argue, however, that because plaintiff did not specify that the leave taken on October 9, 10, and 21 was FMLA leave, defendants had insufficient notice.

Plaintiff's notice to defendants was sufficient. Taking the facts in light most favorable to plaintiff, plaintiff emailed defendant Keravuori on October 7, 2014, and informed him that he would be absent from work on Thursday, October 9, and Friday, October 10, 2014. (DE 50-11 at 3; DE 56-17 at 29; DE 56-16 at 2; DE 56-20 at 25). Prior to emailing defendant Keravuori, plaintiff also spoke to him in person and told him that he was taking FMLA leave on October 9-10, 2014, and that

---

[6] The FMLA additionally provides that "[a]n employer may require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances." 29 C.F.R. § 825.302.

he would be going to the beach. (DE 56-16 at 2; DE 56-20 at 25). Defendant Keravuori approved plaintiff's request to be absent from work on October 9-10, 2014. (DE 56-17 at 29; DE 56-16 at 2; DE 56-20 at 25; DE 56-19 at 61, 65). Plaintiff also spoke to Keravuori to request time off to go to the fair on October 21, 2014. (DE 56-16 at 2; DE 56-20 at 25). Regarding leave both for time to go to the beach and time to go to the fair, plaintiff informed defendant Keravuori that he would be taking care of his wife and child. (DE 56-16 at 2). Keravuori approved plaintiff's request for time off. (DE 56-16 at 2; DE 56-20 at 25). Plaintiff also emailed Keravuori on October 20, 2014, to confirm that he would be absent from work on October 21, 2014. (DE 56-16 at 2; DE 50-11 at 1-2).[7]

Cases cited by defendant are inapposite where employees in those cases failed to initially and sufficiently notify their respective employers of FMLA-protected leave. Here, plaintiff applied for and was granted FMLA leave, and defendants do not provide, and nor is the court aware, of case law, statute, or regulation requiring additional notice to an employer beyond that which was provided here. When taking facts in light most favorable to plaintiff, the court concludes that a jury could reasonably find that plaintiff provided sufficient notice of taking FMLA leave on the days in question.

2.      Retaliation Claim

To succeed on a claim of retaliation, a plaintiff must show "that he engaged in protected activity, that the employer took adverse action against him, and that the adverse action was causally connected to the plaintiff's protected activity." Yashenko, 446 F.3d at 551 (citation omitted). Unlike prescriptive entitlement or interference claims, employer intent here is relevant. Sharif, 841

_____

[7] Additionally, plaintiff identified his absences as FMLA leave on his timesheets for the weeks of October 7-13, 2014 and October 21-27, 2014, and defendant Keravuori noted his approval by signing both timesheet. (DE 56-20 at 25; see also DE 56-4 at 33-42).

F.3d at 203 (citations omitted).

"Intent can be established either by direct evidence of retaliation or through the familiar burden shifting framework articulated in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 800–06 (1973)." <u>Id.</u> (citing <u>Laing v. Fed. Exp. Corp.</u>, 703 F.3d 713, 717 (4th Cir. 2013); <u>Yashenko</u>, 446 F.3d at 551). Under the <u>McDonnell Douglas</u> framework, a plaintiff must first produce sufficient evidence to establish a prima facie case that the elements of retaliation are satisfied. 411 U.S. at 802. The burden of production then shifts to the employer to rebut the prima facie presumption of retaliation and provide "some legitimate, nondiscriminatory reason" for the adverse employment action. <u>Sharif</u>, 841 F.3d at 203 (citing <u>McDonnell Douglas</u>, 411 U.S. at 802). If the employer meets this burden, the presumption of retaliation is dissolved and the plaintiff resumes the burden of persuading the factfinder that the employer's proffered explanation is merely a pretext for discrimination. <u>Id.</u> (citations omitted). A plaintiff may satisfy this burden by showing either that the employer's explanation is not credible, or that the employer's decision was more likely the result of retaliation. <u>Id.</u> (citations omitted). In any event, the plaintiff must produce sufficient evidence to create a genuine dispute of material fact such that a reasonable factfinder could conclude the adverse employment action was taken for an impermissible reason, i.e., retaliation. <u>Id.</u> (citations omitted).

     a.     Prima Facie Case of Retaliation

Plaintiff was approved FMLA leave for two reasons, for the "birth of a son or daughter of the employee and in order to care for such son or daughter" <u>and</u> "to care for the spouse . . . if such spouse . . . has a serious health condition," 29 U.S.C. § 2612(a)(1); (<u>see also</u> DE 51 at 14 ("Plaintiff was granted FMLA leave due to the birth of his child and for the recovery of his wife from

childbirth."); DE 56 at 21 ("Meyer was approved to take intermittent FMLA leave for two separate reasons: (1) to care for his wife's serious health condition; and (2) to bond with his newborn son in the year following his birth.")).

According to plaintiff, before, during, and after plaintiff's trips to the beach and state fair, plaintiff

> care[d] for his wife's serious health condition by eliminating any physical burden on her, whether it be helping up the stairs; in and out of the car; lifting luggage, groceries, household items and the children; lifting and maneuvering the stroller; caring for the newborn (diapering, feeding, soothing, etc.); and by keeping their oldest son from imposing too many physical demands on his wife as she recovered . . . . [Plaintiff] also provided emotional support as his wife dealt with breast feeding issues and bouts of mastitis.

(DE 56 at 23 (citing DE 56-16)).

Defendants argue that plaintiff has failed to put forth a prima facie case of retaliation because plaintiff did not engage in a protected activity as defined by the FMLA where plaintiff was "granted leave due to the birth of his child and for the recovery of his wife from childbirth" but "seeks FMLA protection for his trips to the beach and N.C. State fair after the birth of his child." (DE 51 at 14). In essence, defendants argue there is a geographical limitation to the activities covered by the FMLA, particularly regarding care provided to a spouse who has a serious health condition. (See id. at 14-16).

The court finds no such limitation in the text of applicable regulations nor in binding precedent. First as stated above, the FMLA grants eligible employees leave "to care for the spouse . . . if such spouse . . . has a serious health condition." 29 U.S.C. § 2612(a)(1). The applicable regulations define "care for" to "encompass[] both physical and psychological care," and

> (a) It includes situations where, for example, because of a serious health condition, the family member is unable to care for his or her own basic medical, hygienic, or

nutritional needs or safety, or is unable to transport himself or herself to the doctor, etc. The term also includes providing psychological comfort and reassurance which would be beneficial to a child, spouse, or parent with a serious health condition who is receiving inpatient or home care.

(b) The term also includes situations where the employee may be needed to fill in for others who are caring for the family member, or to make arrangements for changes in care, such as transfer to a nursing home.

29 C.F.R. § 825.124 (emphasis added).[8]  The emphasis in this regulation is on the care provided, not where that care is provided.

The Fourth Circuit has not addressed this specific issue, and other circuits are not in agreement as to whether care provided to a family member under the FMLA allows for travel not connected to medical treatment.  See, e.g., Tayag v. Lahey Clinic Hosp., Inc., 632 F.3d 788, 791 n.2 (1st Cir.2011) (holding an employee "properly does not claim that caring for her husband would itself be protected leave" if the pair traveled "for reasons unrelated to medical treatment of [her husband's] illnesses."); Ballard v. Chicago Park Dist., 741 F.3d 838 (7th Cir. 2016) (holding that whether the true reason for the employee's trip with her relative was a vacation, as argued by employer, or to provide care to her mother, as argued by employee, was not to be determined on summary judgment, stating "the FMLA's text does not restrict care to a particular place or geographic location. For instance, it does not say that an employee is entitled to time off 'to care at home for' a family member. The only limitation it places on care is that the family member must have a serious health condition. We are reluctant, without good reason, to read in another limitation that Congress has not provided.").

The court need not resolve this issue because unlike cases cited above, in this case, plaintiff's

---

[8] The FMLA regulations were updated effective January 15, 2009; § 825.124 was formerly § 825.116.

FMLA leave was approved both to care for his wife who had a serious medical condition and because of the birth of his second child. The latter requires no showing of medical necessity, and defendants provide no support in case law, statute, or regulations, nor is the court aware of any, suggesting leave taken pursuant to 29 U.S.C. § 2612(a)(1)(A) is geographically restricted.[9] See 29 C.F.R. § 825.120 ("Both parents are entitled to FMLA leave to be with the healthy newborn child (i.e., bonding time) during the 12–month period beginning on the date of birth."); id. §825.202 ("When leave is taken after the birth of a healthy child or placement of a healthy child for adoption or foster care, an employee may take leave intermittently or on a reduced leave schedule only if the employer agrees"); see also Blohm v. Dillard's Inc., 95 F. Supp. 2d 473, 478–79 (E.D.N.C. 2000) ("Relying solely on provisions of the FMLA governing intermittent and reduced leave schedules necessitated by "serious health conditions"—issues which have nothing to do with the facts of this case— . . . . an employee, like plaintiff, taking leave under 29 U.S.C. § 2612(a)(1)(A) based on the birth of a child").[10]

Accordingly, the court finds a jury could reasonably infer that plaintiff engaged in protected activities under the FMLA, thus establishing a prima facie case of retaliation.[11]

      b.      Legitimate, Non-Discriminatory Reason for Termination and Pretext

---

[9] Defendant Franklin testified that had plaintiff taken a 12-week block of leave, instead of intermittent leave, there would have been no restrictions on his travel, (see DE 56-17 at 23), but does not explain the rational behind this distinction nor indicate that plaintiff was made aware of defendants' position prior to taking the leave in question.

[10] The numerous cases cited by defendant wherein employees did not seek and receive approval for leave due to the birth of a child are inapplicable. See, e.g., Campbell v. Verizon Virginia, Inc., 812 F. Supp. 2d 748, 755 (E.D. Va. 2011), aff'd, 474 F. App'x 167 (4th Cir. 2012) ("Verizon terminated Campbell because it learned that he was gambling at a time during which he had invoked his pre-approved FMLA leave—a fact Campbell does not deny.').

[11] Defendants do not assert that plaintiff did not suffer an adverse employment action, his termination, or that the adverse action was not causally connected to the challenged activity. The court finds that plaintiff has offered sufficient evidence of these elements to survive summary judgment.

The burden now shifts to defendants to provide "some legitimate, nondiscriminatory reason" for the adverse employment action.  Sharif, 841 F. 3d at 203 (citing McDonnell Douglas, 411 U.S. at 802).  If the burden is met, plaintiff resumes the burden of persuasion that defendants' proffered explanation for terminating plaintiff is merely a pretext for discrimination. Id.

"The FMLA does not prevent an employer from terminating an employee for poor performance, misconduct, or insubordinate behavior." Vannoy v. Fed. Reserve Bank of Richmond, 827 F.3d 296, 304–05 (4th Cir. 2016). "[W]hen an employer gives a legitimate, nondiscriminatory reason for discharging the plaintiff, it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." Laing v. Fed. Exp. Corp., 703 F.3d 713, 722 (4th Cir. 2013) (citation omitted).

Courts utilize the "honest belief rule" to evaluate employers' responses to claims of employment discrimination, under which "[an] employee must present evidence reasonably calling into question the honesty of his employer's belief . . . ." DeJarnette v. Corning, Inc., 133 F.3d 293, 299 (4th Cir. 1998) (citing Giannopoulos v. Brach & Brock Confections, Inc., 109 F.3d 406, 411 (7th Cir. 1997)); see EEOC v. Sears Roebuck & Co., 243 F.3d 846, 853 (4th Cir. 2001) (holding that plaintiff had put forth sufficient evidence of pretext where the record did not support the employer's contention that the employee's supervisor "honestly believed" that the plaintiff had been investigated for sexual harassment).

To find a genuine dispute of material fact exists regarding whether an apparently legitimate, non-discriminatory reason actually is pretext for discrimination, "it is not enough to dis believe the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 147 (2000) (citation omitted).  Proof

that "the employer's proffered reason is unpersuasive . . . does not necessarily establish that the plaintiff's proffered reason is correct." <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 524 (1993). For example, the "plaintiff must produce evidence that goes beyond that which was necessary to make a prima facie showing by pointing out specific, non-speculative facts which discredit the defendant's non-retaliatory motive." <u>Nguyen v. Austin Quality Foods, Inc.</u>, 974 F. Supp. 2d 879, 884 (E.D.N.C. 2013) (citation omitted).

Employers are entitled some discretion in making employment decisions. <u>DeJarnette</u>, 133 F.3d at 299 ("[T]his Court does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination.") (quotations omitted). In evaluating opinions regarding termination, "it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." <u>Id.</u> (citation omitted).

Here, defendants have carried their burden by offering a legitimate, nondiscriminatory reason for plaintiff's termination: abuse of leave time under the Town's sick leave policy. It is undisputed that defendant Town's sick leave policy states, "[s]ick leave with pay is not a right, which an employee may demand, but a privilege granted for the benefit of an employee when sick," and sick leave may be used "when an employee <u>must care</u> for a member of his or her 'immediate family.'" (DE 49 ¶ 4; DE 57 ¶ 4). The policy also provides that "[u]sing sick leave under false pretenses is a serious violation of Town policy and would be grounds for dismissal," and that "[c]laiming sick leave under false pretenses will result in disciplinary action up to and including dismissal." (DE 49 ¶ 4; DE 57 ¶ 4)). Finally, the policy provides that vacation "<u>shall be</u> used for rest and relaxation and may be used for medical purposes." (DE 49 ¶ 4; DE 57 ¶ 4). Additionally, defendants have put forth evidence that "it was reported to the Town that plaintiff went to the beach and to the N.C.

State Fair and reported, or planned to report, his absences as sick leave," and that "[g]oing to the beach and the Fair is not a valid use of sick leave under the Town's personnel policy." (DE 51 at 17).

However, plaintiff satisfies his burden that this nondiscriminatory explanation for his termination, that he abused leave time, is pretext for FMLA retaliation.

Taking facts in light most favorable to plaintiff, prior to the birth of his second child, plaintiff met with defendant Franklin seeking approval to take FMLA-leave. (DE 56-16 at 1). Plaintiff and defendants agree that the forms defendant Franklin instructed plaintiff to fill out directed plaintiff to use all sick leave and vacation leave prior to use of FMLA leave and that defendant Franklin told plaintiff "to use sick leave for any absences related to the need to care for my wife and child." (Id.).

Although somewhat unclear, defendant Franklin also testified as follows:

A: If it was related to care for his spouse or the baby or in that capacity, then he needed to write FMLA and use sick time for that . . . .
Q: If he had asked for a 12-week absence, would you have approved that?
A: I would have.
Q: Okay. Would there have been any limitation on where he could go or what he could do during those 12 weeks?
A: Not if he was on not intermittent but one block of time leave, no . . . .
Q: So he needed to figure out for himself whether to use sick leave or vacation leave?
A: It was his choice.

(DE 56-17 at 23).

Thereafter, plaintiff did as felt he was instructed and substituted paid sick leave for each FMLA-related absences taken and noted "FMLA" on each of his time sheets, each of which was approved by supervisor defendant Keravuori. (See DE 56-4 at 33-42). Additionally, plaintiff informed

Keravuori in person about the days off that I took on October 9-10, 2014 to go to the

beach with my family, [as] well as October 21, 2014 when I went with the family to the State Fair. I told him, as to both of those occasions, that I would be caring for Katherine and spending time with the baby. He did not ask me what I would be doing specifically to care for them, but he knew I was on approved FMLA designation for Katherine's condition (recovering from her C-Section) and to bond with the baby. I followed both of those conversations, in which I also assured him that I had coverage, with emails to remind him. I told him what I was doing on both occasions (beach, fair), and he approved my time sheets as to both of those situations.

(DE 56-16 at 2).[12]

Notwithstanding, defendant Franklin launched an investigation of plaintiff after she was informed that plaintiff had used or planned to use sick leave for the days in question, which eventually led to her recommending plaintiff be terminated, a recommendation defendant Keravuori approved. (See DE 49 ¶¶ 30-33; DE 57 ¶¶ 30-33).

Based on these facts, taken in light most favorable to plaintiff, it is reasonable to infer that plaintiff sought and received approval for FMLA leave from defendants Franklin and Keravuori, followed all instructions given, and was thereafter terminated based on decisions made, in part, by these same defendants. Such unexplained inconsistency is sufficient evidence to allow a reasonable factfinder to determine defendants' rationale for terminating plaintiff is "unworthy of credence." See E.E.O.C., 243 F.3d at 854 ("When the employee is able to produce sufficient evidence to establish that the employer failed to make a reasonably informed and considered decision before taking its adverse employment action, thereby making its decisional process 'unworthy of credence,' then any reliance placed by the employer in such a process cannot be said to be honestly held.") (citing Smith v. Chrysler Corp., 155 F.3d 799, 807-08 (6th Cir.1998)); see also Dennis v. Columbia

---

[12] Plaintiff also took one half day in October 6, 2014, where he and other employees participated in the police department charity golf tournament, and selected vacation time for that absence because "that had nothing to do with caring for Katherine or spending time for the baby." (DE 56-16 at 2).

Colleton Med. Ctr., 290 F.3d 639, 646-47 (4th Cir. 2002) (holding pretext can be established by showing contradictions, inconsistencies, and post-hoc rationalizations on the part of the employer.). This showing is sufficient to permit a trier of fact to "infer the ultimate fact of discrimination from the falsity of the employer's explanation." Reeves, 120 S.Ct. at 2108.

This case stands in contrast to the companion case brought by plaintiff's former coworker, the Haley case, wherein plaintiff and defendants in that case did not discuss FMLA leave and thus plaintiff was not approved for FMLA leave, see Ameen v. Amphenol Printed Circuits, Inc., 777 F.3d 63, 70 (1st Cir. 2015) (holding that to succeed on an FMLA retaliation claim, a plaintiff "must show that the retaliator knew about [his] protected activity—after all, one cannot have been motivated to retaliate by something he was unaware of"), and where plaintiff put forth no evidence to suggest defendants' decision to terminate him was pretext, see, e.g., Capps v. Mondelez Glob., LLC, 847 F.3d 144, 155 (3d Cir. 2017) ("Although Capps argues that Mondelez was mistaken in its belief that Capps misused his leave or was otherwise dishonest with regard to the leave taken, there is a lack of evidence indicating that Mondelez did not honestly hold that belief. Accordingly, in light of insufficient evidence for a reasonable factfinder to conclude that Mondelez's legitimate, nondiscriminatory explanation for terminating Capps' employment was a pretext, the District Court properly granted summary judgment on Capps' FMLA retaliation claim.").

Accordingly, defendants' motion for summary judgment as to plaintiff's claim of FMLA retaliation is denied.

3.      Interference Claim

To state a claim of interference with a prescriptive right under the FMLA, a covered

employee must establish "(1) he is entitled to an FMLA benefit; (2) his employer interfered with the provision of that benefit; and (3) that interference caused harm." Adams v. Anne Arundel Cty. Pub. Sch., 789 F.3d 422, 427 (4th Cir. 2015) (citations omitted).[13]  Unlike a retaliation claim, employer intent is not relevant in assessing an interference claim.  Sharif, 841 F.3d at 203 (citations omitted).

Additionally, "[a]n FMLA notice violation can be an actionable interference claim for which an employee may recover, so long as he makes a showing of prejudice flowing from the violation." Vannoy, 827 F.3d at 301–02 (citing Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89 (2002) (holding employee must "ha[ve] been prejudiced by the violation" to obtain relief)).

Regarding notice requirements, the FMLA requires that employers provide an individual, written notice to affected employees that an absence qualifies under the FMLA.  See 29 C.F.R. § 825.300.  There are two types of individualized notice that the employer must give an employee who may be entitled to FMLA leave: a "rights and responsibilities notice," id. § 825.300(c); and a "designation notice," id. § 825.300(d).  As stated by the Fourth Circuit, "[t]he purpose of the employer notice requirements 'is to ensure that employers allow their employees to make informed decisions about leave.'"  Vannoy, 827 F. 3d at 301 (citation omitted).

a.      FMLA Notice Violation

Here, it is reasonable to infer from the evidence viewed in the light most favorable to plaintiff that defendants interfered with plaintiff's FMLA rights by failing to provide the proper notification to plaintiff.

Plaintiff applied for and was granted FMLA leave with regard to the birth of his second son. Once an employee provides an employer with sufficient notice of the need for FMLA leave, an

_____

[13] There is no dispute in this case that plaintiff is an "eligible employee" under the FMLA.  (See DE 56 at 14).

employer is required to provide notice of rights and responsibility. 29 C.F.R. § 825.300. As

relevant to the present dispute, the following information must be provided to the employee by the

employer:

> (c) Rights and responsibilities notice.
>> (1) Employers shall provide written notice detailing the specific expectations
>> and obligations of the employee and explaining any consequences of a failure
>> to meet these obligations . . . . Such specific notice must include, as
>> appropriate: . . . .
>>> (iii) The employee's right to substitute paid leave, whether the
>>> employer will require the substitution of paid leave, the conditions
>>> related to any substitution, and the employee's entitlement to take
>>> unpaid FMLA leave if the employee does not meet the conditions for
>>> paid leave . . . .
>> (6) A prototype notice of rights and responsibilities may be obtained from
>> local offices of the Wage and Hour Division or from the Internet at
>> www.dol.gov/whd. Employers may adapt the prototype notice as appropriate
>> to meet these notice requirements . . . .

Id. § 825.300(c).

Turning to the prototype notice of rights and responsibilities referenced in 29 C.F.R. §

825.300(c)(6), the prototype notice includes the following with blanks to be either be checked if they

apply or left blank if they do not apply:

> If your leave does qualify as FMLA leave you will have the following
> responsibilities while on FMLA leave (only checked blanks apply): . . .____ You
> will be required to use your available paid _____ sick, _____ vacation, and/or
> _____other leave during your FMLA absence. This means that you will receive
> your paid leave and the leave will also be considered protected FMLA leave and
> counted against your FMLA leave entitlement.

United States Department of Labor, Wage and Hour Division, WH-381: FMLA Notice of Eligibility

and Rights & Responsibilities, rev. Feb. 2013, https://www.dol.gov/whd/forms/index.htm

[https://perma.cc/7XZN-UY4F]; see also Pellegrino v. Commc'ns Workers of Am., 478 F. App'x

742, 746 (3d Cir. 2012) ("The Department of Labor provides Form WH–381, which she received,

as a standard notice that satisfies the regulation's requirements").

Additionally, an employer is required to provide a designation notice:

> (d) Designation notice.
>> (1) The employer is responsible in all circumstances for designating leave as FMLA–qualifying, and for giving notice of the designation to the employee as provided in this section . . . . If the employer requires paid leave to be substituted for unpaid FMLA leave, or that paid leave taken under an existing leave plan be counted as FMLA leave, the employer must inform the employee of this designation at the time of designating the FMLA leave . . . .
>> (4) The designation notice must be in writing. A prototype designation notice may be obtained from local offices of the Wage and Hour Division or from the Internet at www.dol.gov/whd. If the leave is not designated as FMLA leave because it does not meet the requirements of the Act, the notice to the employee that the leave is not designated as FMLA leave may be in the form of a simple written statement.

Id. § 825.300(d).

Turning to the prototype designation noticed referenced in 29 C.F.R. § 825.300(d)(4), the prototype notice includes the following to be checked if applicable: "___ We are requiring you to substitute or use paid leave during your FMLA leave." United States Department of Labor, Wage and Hour Division, WH-382: FMLA Designation Notice, rev. Jan. 2009, https://www.dol.gov/whd/forms/index.htm [https://perma.cc/7XZN-UY4F].

As stated by plaintiff, "Town failed to send Meyer a notice of rights and responsibilities notice. Defendants can point to no evidence in record that Meyer received any other written notice following the birth of his second child setting forth the Town's conditions related to the substitution of paid leave." (DE 56 at 19).[14] Defendants offer no response, and the record does not indicate plaintiff received a notice of rights and responsibilities. Here, defendants did not provide the

---

[14] It is undisputed that defendants provided plaintiff with the designation notice wherein the box for "We are requiring you to substitute or use paid leave during your FMLA leave" was checked. (DE 56-12 at 1).

required FMLA notice; therefore, defendants denied plaintiff benefits he was entitled to under the FMLA.

### b. Prejudice Stemming from Lack of Notice

Although plaintiff did not receive proper notice, plaintiff's interference claim fails because he cannot prove prejudice stemming from lack of notice.

Had defendants provided with the proper notice, for example providing plaintiff with form WH-381, FMLA Notice of Eligibility and Rights & Responsibilities, cited above, and checking the boxes for both sick and vacation leave, this would have been consistent with defendants' personnel policy. (See DE 56-1 at 7 ("Employees requesting Family Medical Leave are required to exhaust all accrued sick, vacation and compensation leave. Once paid leave is depleted, unpaid leave will commence for the remainder of an employee's Family and Medical leave.")). Defendants would have therefore provided plaintiff with the same information previously provided to plaintiff in defendants' personal policy, (see DE 49 ¶ 3; DE 57 ¶ 3 (Plaintiff was provided with a copy of defendant Town's personnel policy.)), and it is not reasonable to infer plaintiff would have taken vacation instead of sick leave based on information plaintiff already had.

Plaintiff disagrees, arguing that "it is reasonable to infer that (1) had the Town provided Meyer with a rights and responsibilities notice; and (2) had the notice set forth the Town's asserted requirement that paid sick leave could only be substituted for unpaid FMLA leave if consistent with the Town's sick leave policy; then (3) Meyer would have structured his leave differently by taking vacation (as he did for the golf tournament) instead of sick leave on October 9-10, 2014 and October 21, 2014." (DE 56 at 20); see also Vannoy, 827 F.3d at 302 ("Prejudice may be gleaned from evidence that had the plaintiff received the required (but omitted) information regarding his FMLA

rights, he would have structured his leave differently.").

Plaintiff overestimates what information defendants were required to supply to plaintiff in their FMLA notice. As stated above, form WH-381 provides an example of the information necessary to supply to plaintiff and in that form, an employer may indicate, consistent with defendants' personnel policy here, that plaintiff must exhaust all paid leave, either vacation time, sick time, or both, prior to use of unpaid leave. Related, plaintiff conflates notice regarding his FMLA rights, which defendants were required to provide, with notice regarding defendants' sick-leave policy, which the FMLA does not mandate defendants' provide. See Pellegrino, 478 F. App'x at 746 (on summary judgment, holding no interference to plaintiff's FMLA rights where plaintiff was on FMLA leave , was terminated, and alleged she was not informed of the travel restriction found in employer's sick leave policy, stating "Pellegrino did, however, receive a notice of her obligations under the FMLA . . . . Those requirements, which the regulation enumerates, are specific to the FMLA . . . . It and its regulations are silent as to what, if any, notice an employee must receive about corporate paid sick leave policies.").[15]

In sum, defendants' motion for summary judgment as to plaintiff's interference claims is granted.

4.      Individual Liability

Defendants next argue that individual defendants are entitled to be dismissed from the

---

[15] Plaintiff additionally argues more generally that "[p]rejudice exists where an employee loses compensation or benefits 'by reason of the violation,'; sustains other monetary losses 'as a direct result of the violation,'; or suffers some loss in employment status remediable through 'appropriate equitable relief,' and that "it is reasonable to infer that the denial of Meyer's FMLA rights directly led to his termination and that had he received the required notice under the Act and substituted vacation leave rather than sick leave, he would not have suffered from the loss of his employment or incurred the ensuing loss of compensation and benefits." (DE 56 at 20 (citing 29 U.S.C. § 2617(a)(1))). However, plaintiff does not allege interference with his FMLA rights beyond defendants' failure to provide proper notice, addressed above.

present case because the FMLA does not provide a cause of action against individual employees and individual defendants do not meet the definition of "employer" as defined by the FMLA. (DE 51 at 23).[16]

"[W]hether the FMLA imposes liability on employee supervisors in their individual capacities is an open question in this circuit." Jones v. Sternheimer, 387 F. App'x 366, 368 (4th Cir. 2010). However, the court need not resolve this issue at this time. Even if the FMLA provides for liability of individual defendant employee supervisors as found here, these individual defendants are entitled to qualified immunity.

Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (emphasis added). In other words, a government official is entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. Pearson v. Callahan, 555

---

[16] The FMLA defines "employer" as:

(A) In general
The term "employer"--
    (i) means any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year;
    (ii) includes--
        (I) any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer; and
        (II) any successor in interest of an employer;
    (iii) includes any "public agency", as defined in section 203(x) of this title; and
    (iv) includes the Government Accountability Office and the Library of Congress.
(B) Public agency
For purposes of subparagraph (A)(iii), a public agency shall be considered to be a person engaged in commerce or in an industry or activity affecting commerce.

29 U.S.C. § 2611(4) (emphasis added).

U.S. 223, 236 (2009) (emphasis added). As stated by the Fourth Circuit, "[i]n evaluating whether qualified immunity exists, we must keep in mind that it is the plaintiff's constitutional right that must be clearly established, not a plaintiff's access to a monetary <u>remedy</u>." <u>Owens v. Baltimore City State's Attorneys Office</u>, 767 F.3d 379, 398 (4th Cir. 2014) (emphasis in original); <u>see id.</u> at 400 ("This holding, the dissent contends, fails to notify police officers of their susceptibility to suit, and thus, the Officers in the case at hand enjoy qualified immunity. We cannot agree.").

Based on the above precedent, the court rejects defendants' argument that individual defendants are entitled to qualified immunity because it is "far from clearly established that public employees can be sued in their individual capacities." (DE 51 at 23). The court's inquiry concerns plaintiff's statutory rights under the FMLA not defendants' susceptibility to suit.

However, defendants additionally assert "there is no clearly established authority which would have put Defendants on notice that attending the State Fair or traveling to the beach are protected activities under the FMLA." (DE 51 at 24; DE 61 at 9).

The Supreme Court's recent direction in <u>White v. Pauly</u>, 137 S. Ct. 548, 551–52 (2017) is of significance. In <u>White</u>, the Court directed that although a qualified immunity analysis "do[es] not require a case directly on point" for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate," stating immunity protects "all but the plainly incompetent or those who knowingly violate the law." <u>Id.</u> at 552 (citations omitted). The Court stated "it is again necessary to reiterate the longstanding principle that clearly established law should not be defined at a high level of generality," and that the "clearly established law must be 'particularized' to the facts of the case." <u>Id.</u> (citations omitted). Finally, in reversing the panel majority below, the court stated that the "panel majority misunderstood the 'clearly established'

analysis: It failed to identify a case where an officer acting under similar circumstances as Officer White was held to have violated the Fourth Amendment," and instead relied on cases that articulated the applicable principle "at only a general level," cases that "do not by themselves create clearly established law outside 'an obvious case.'" Id. (citations omitted).

Here, statute, regulations, and case law make clear, on a general level, plaintiff's statutory rights. See 29 C.F.R. § 825.120 ("Both parents are entitled to FMLA leave to be with the healthy newborn child (i.e., bonding time) during the 12–month period beginning on the date of birth."); id. § 825.202 ("When leave is taken after the birth of a healthy child or placement of a healthy child for adoption or foster care, an employee may take leave intermittently or on a reduced leave schedule only if the employer agrees"); see also Darby, 287 F.3d at 681 ("The Family and Medical Leave Act creates clearly established statutory rights, including the right to be free of discrimination or retaliation on account of one's exercise of leave rights granted by the statute.").

However, this is not an obvious case, and plaintiff fails to identify a case or cases, and the court is not aware of any, that would have provided notice to these defendants in 2014 that their alleged misconduct was a violation of the FMLA. Therefore, the court cannot hold that defendants' alleged conduct, retaliation against plaintiff for exercising FMLA right to take his family to the beach or fair, violated "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818. Accordingly, the court determines in this instance that individual defendants are entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, court DENIES IN PART AND GRANTS IN PART defendants' motion for summary judgment. (DE 48). Plaintiff's claim for retaliation under the FMLA is

allowed to proceed against defendant Town. All other defendants are DISMISSED. The parties are DIRECTED to confer and file within **21 days** from date of entry of this order a joint status report specifying the estimated length of the trial, three alternative suggested trial dates, and suggested alternative dispute resolution techniques to be employed prior to trial in attempt to resolve the remaining issues between the parties. Upon receipt of the parties' report, the court will enter such further order as is warranted regarding pretrial and trial scheduling.

SO ORDERED, this the 28th day of September, 2018.

LOUISE W. FLANAGAN
United States District Judge